C. H. FRALEY, Appellant,

v.

ZALES JEWELRY COMPANY, Inc.,

Appellee.

No. 6578.

Court of Civil Appeals of Texas.

Amarillo.

March 19, 1956.

Rehearing Denied April 16, 1956.

Homer L. Moss, Borger, and Andrew Fraley, Oklahoma City, Okl., for appellant.

Snodgrass & Calhoun, Amarillo, for appellee.

PITTS, Chief Justice.

This is an appeal from a judgment upon a jury verdict for the balance of $1,147.95 due appellee, Zales Jewelry Company, by appellant, C. H. Fraley, on a sworn account together with attorney fees and the foreclosure of a chattel mortgage lien and order of sale of a certain diamond ring previously sold by appellee to appellant. Appellant sought to defeat the alleged balance due on the account by allegations of fraud and that the sale of the diamond ring to him by appellee "was entered into on Sunday and thus void." The jury found against appellant on the issue of fraud by finding in effect that the ring was sold in good faith at a reasonable market value to appellant by appellee through its agent, Richard Hankin. The jury likewise found that appellant signed the chattel mortgage on October 26, 1952, with the understanding and upon agreement that the same was to be thereafter filled out and completed by Richard Hankin as a chattel mortgage given appellee on the said diamond ring and properly filed of record and it also found that appellee had made demand upon appellant for the unpaid balance of the account prior to filing its suit on June 16, 1954.

In seeking a reversal of the trial court's judgment, appellant relies solely upon his claim that the sale of the ring in question was consummated on Sunday and therefore constitutes an invalid sales' contract. Appellant concedes that on Saturday, October 25, 1952, he talked by telephone from Borger, Texas, to appellee's agent, Richard Hankin, at Amarillo, Texas, about trading in a diamond ring he had previously purchased from appellee on a more expensive diamond ring and paying appellee the difference; that Hankin urged him to come to the Amarillo store that (Saturday) afternoon and make a selection of the new ring but appellant insisted that it was not convenient for him to go to Amarillo on Saturday but he desired to go on Sunday, the next day, to select the ring; that Hankin advised him that appellee did not ordinarily show diamonds on Sunday but because appellant was an old customer such would be done to accommodate him.

The evidence more fully reveals that Hankin told appellant by telephone on Saturday that appellee did not open the store or show any diamonds on Sunday and urged appellant to come either on that Saturday afternoon or early the next week but appellant said he could not come except on Sunday and he would be grateful if Hankin would let him come on Sunday when he could spend all that day selecting a new ring. As a result of the conversation by telephone, Hankin met appellant at the Amarillo store at 11:00 o'clock A. M. on Sunday, October 26, 1952, for the purpose of helping appellant to select a new diamond ring for himself. After examination of various diamonds, appellant selected the largest diamond in stock, which was a loose diamond and needed to be set in the ring selected. Hankin wanted more time for setting the diamond in the ring because such was an important task which took time and also because appellee's jeweler, who did such work, did not work on Sunday and was not available. Hankin urged that the diamond be left with him to be set in a mounting the following Monday or

Tuesday, but appellant insisted that such be done on that day (Sunday). After some difficulty, Hankin found the jeweler who ordinarily did such work and had him come to the store and set the loose diamond in order to accommodate appellant on that day, although the store was not open for business and appellee did not ordinarily show diamonds on Sunday. However, appellant was then ·informed by appellee's jeweler, Homer Damron, who set the diamond, that the setting had been made hurriedly and it should be returned by appellant soon for rechecking and more work to be done on it. Appellant soon thereafter returned the diamond to appellee's jeweler for rechecking, which was done and the jeweler also worked the setting over and particularly "fixed the prongs on it a little thicker." However, on the Sunday in question, appellant signed a sales ticket evidencing the purchase charge from appellee and also signed a chattel mortgage in blank with authority given appellee to fill in the terms of the same over his signature. Both the sales ticket and the chattel mortgage were introduced in evidence and are before us, each bearing the date of October 25, 1952, which date, according to all of the evidence, was on Saturday before the Sunday on which the diamond was selected by appellant and partially mounted for him. Both the sales ticket and the mortgage reveal that the sale price of the diamond was $3,950 with a credit of $1,750 allowed appellant on the exchange price of the ring appellant traded in on the transaction, leaving a balance of $2,200 due appellee by appellant. The mortgage reveals that appellant obligated himself to pay appellee $100 per month on the 25th day of each succeeding month until the full amount was paid. The evidence reveals that appellant thereafter made six payments upon the account, each payment having been made on a secular day and not on Sunday, which total payments aggregated $985. On May 10, 1954, appellant sought to make another payment of $300 on the account by a check, which check was not honored when presented for payment because of insufficient funds and such sum was charged back against appellant's account. The evidence reveals that after appellant defaulted in his payments, he was contacted by appellee's agents, including Richard Hankin, many times about paying the balance due; that appellant never denied the account but acknowledged it on every occasion and promised at each time to pay it and did pay some of it after having first defaulted.

It conclusively appears from the evidence that the negotiations for the transaction began on Saturday October 25, 1952, and that only at appellant's urgent request was he permitted to select the diamond on Sunday and that at appellant's additional urgent request appellee's agents, although inconveniently and out of the ordinary, went to considerable trouble ·to hurriedly mount the diamond for him on Sunday, upon the condition that he return it to appellee soon thereafter for rechecking and for more work to be done thereon and that the diamond was thereafter voluntarily returned to appellee by appellant on a day other than Sunday for such a purpose when the diamond was finally and completely finished and redelivered by appellee to appellant; that appellant signed the sales ticket and the mortgage, which mortgage was filled out with appellant's approval by appellee's agent on Monday following the other transaction had between the parties on the previous Saturday and Sunday; that both instruments bear the date of Saturday, October 25, 1952, the day the negotiations between appellant and Hankin began; that appellant consistently met his payments until he had financial troubles because of other investments and defaulted, but he then renewed his promises orally to meet the payments due and thereafter met some of them until he again defaulted, which resulted in the filing of this suit.

It therefore conclusively appears that the sales contract for the diamond was not fully consummated on Sunday, although some of the transactions occurred on Sunday, but only at appellant's urgent request. The diamond was then delivered to appellant on Sunday upon the condition that he return it soon for a recheck and a final completion of the setting, which was later

done when he returned it voluntarily for rechecking and completion. "\* \* \* a contract which has not been fully closed on Sunday is not void because some of its terms may have been fixed on that day, or even because most of the business out of which the consideration of the contract has arisen has been transacted on that, day." 39 Tex.Jur. 875, Sec. 13.

It likewise conclusively appears from the evidence that appellant voluntarily. made six installment payments on the account, returned the ring by agreement for a better setting in the mounting, acknowledged the account on many occasions, discussed full payment thereof with appellee's agents and renewed his promises several times to pay the account before he in any manner challenged the validity of the contract on the alleged grounds it was consummated on Sunday. For these reasons it appears that in most jurisdictions appellant would be bound by the terms of the sales contract and mortgage in any event by reason of his subsequent affirmances and ratifications. 68 L.R.A. 1487–1497; 50 Am. Jur. 839–842.

Some Texas courts have held that a contract fully executed on Sunday is invalid. However, in the case of Republic Ins. Co. v. Poole, Tex.Civ.App., 257 S.W. 624, 625, (writ refused), an attempt was made to invalidate an insurance contract because it was made on Sunday. The court there said in part:

"Contracts made on Sunday are not regarded as invalid. 25 R.C.L., § 16; Schneider [& Davis] v. Sansom, 62 Tex. 201, 50 Am.Rep. 521; Behan v. Ghio, 75 Tex. 87, 12 S.W. 996."

In the case of Blackwell v. General Motors Acceptance Corporation, Tex. Civ.App., 54 S.W.2d 251, 252, the court said in part:

"The rule adopted by the Texas courts seems to be that: 'The plaintiff cannot recover when it is necessary for him to prove, as a part of his cause of action, his own illegal contract or other illegal transaction; but if he can show a complete cause of action without being obliged to prove his own illegal act, although such illegal act may incidentally appear, and may be important even as explanatory of other facts in the case, he may recover.' Beer et al v. Landman, 88 Tex. 450, 31 S.W. 805, 807."

In the case at bar the instruments signed by appellant and furnishing a basis for this suit were dated on Saturday, October 25, 1952, and all of appellant's payments on the account were also made on a secular day. Therefore, appellee established a complete cause of action by the introduction of these instruments along with oral testimony without being obliged to prove that any part of the transaction occurred on Sunday. Applying the foregoing rule of law to the facts presented in the instant case, appellee is entitled to recover in any event.

In the recent case of Smothers v. Gawlik, Tex.Civ.App., 214 S.W.2d 894, 895, we find the following quotation and authorities cited:

"As said in the case of Heidenheimer v. Beer, Tex.Civ.App., 155 S.W. 352, 356, er. ref.: 'While the courts will not aid in the enforcement of a contract that violates the written law of the state, or contravenes public policy, the mere fact that it incidentally appears that a plaintiff has thus offended will not defeat his right to a recovery, which otherwise he would be entitled to. Sinner though he may be, the law will redress his wrongs'. See also Beer v. Landman, 88 Tex. 450, 31 S.W. 805; Hall v. Edwards, Tex.Com.App., 222 S.W. 167; Stone v. Robinson, Tex. Com.App., 234 S.W. 1094; Blackwell v. General Motors Acceptance Corp., Tex.Civ.App., 54 S.W.2d 251; City of Galveston v. O'Mara, Tex.Civ.App., 146 S.W.2d 416; City of Galveston v. Heffernan, 138 Tex. 16, 155 S.W.2d 912."

These authorities support appellee's rights of recovery.

Because the negotiations for the sale of the diamond began on Saturday, and, although some of the details of the transaction occurred on Sunday, the final setting of the diamond in the mounting was subsequently completed on a secular day by agreement of the parties with the instruments evidencing the sale and the mortgage being dated on Saturday and because appellant, by his subsequent acknowledgments and oral statements ratified, reaffirmed and renewed his promises to pay the account in full, we believe he is bound and obligated in any event to pay the remainder of the account.

For the reasons stated, appellant's points of error are overruled and the judgment of the trial court is affirmed. It is the opinion of this writer also that appellant, under the rules of law and equity, should not be permitted in any event to induce appellee's agents to let him select a diamond and have them mount it for him on Sunday for his own accommodation and then seek to take the advantage of any wrong he induced them to commit for his benefit as the evidence conclusively reveals he did in the case at bar. Affirmed.