**Daren and Leslie McCOLLESTER, et al.**

v.

**The CITY OF KEENE, et al.**

Civ. No. 82–50–D.

United States District Court, D. New Hampshire.

May 16, 1984.

---

Russell F. Hilliard, Concord, N.H., for plaintiffs.

Charles H. Morang, City Atty., Keene, N.H., Wadleigh, Starr, Peters, Dunn & Kohls by Eugene M. Van Loan, III, Manchester, N.H., for defendants.

## OPINION

DEVINE, Chief Judge.

This is a civil rights action under 42 U.S.C. § 1983 wherein plaintiffs, juveniles and their parents, attack the facial validity of a juvenile curfew ordinance of the City of Keene, New Hampshire, as violative of the First and Fourteenth Amendments of the United States Constitution. Plaintiffs claim that the ordinance imposes unreasonable nocturnal curfew restraints on juve-niles, invades parents' right of family privacy, and imposes impermissible criminal liability on parents for their children's curfew violations. Plaintiffs seek a declaratory judgment under 28 U.S.C. §§ 2201, 2202, adjudging the ordinance unconstitutional, and a permanent injunction enjoining its enforcement. Both plaintiffs and defendants have filed motions for summary judgment.

This Court declared a previous version of the Keene juvenile curfew ordinance to be facially invalid in *McCollester v. City of Keene, New Hampshire*, 514 F.Supp. 1046 (D.N.H.1981) *("McCollester I")*, finding it an unconstitutional deprivation of plaintiffs' Fourteenth Amendment Due Process rights. The Court found the ordinance to be overbroad in scope, resulting in an unreasonable intrusion into the personal liberty interests of juveniles and their parents, and not justified by a substantial and legitimate state interest. The Court determined that the Keene ordinance usurped the traditional parental role in supervising a child's activities, finding that even reasonable, non-negligent parental supervision could result in juvenile violations and parental liability under the ordinance. *Id.* at 1052–53. Finally, the Court ruled that the City of Keene's interests were not sufficiently strong to justify the curtailment of juveniles' individual freedom and the usurpation of parental supervision under the tests of *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) *("Bellotti II")*, and *Richards v. Thurston*, 424 F.2d 1281 (1st Cir.1970).

On appeal, the First Circuit vacated the decision on jurisdictional grounds, finding that plaintiff's complaint had not presented a justiciable issue. *McCollester v. Keene*, 668 F.2d 617 (1st Cir.1982). On remand, this Court ultimately determined that plaintiffs had stated a justiciable claim. *McCollester v. Keene*, No. 82–50 (D.N.H. Aug. 13, 1983) (order granting preliminary injunction).[1] As this Court's earlier decision in

---

1. This Court initially determined that plaintiffs had not stated a justiciable issue, *McCollester v. Keene*, No. 82–50–D (D.N.H. Mar. 12, 1982) (or-der dismissing case for lack of jurisdiction), but on appeal the First Circuit Court of Appeals reversed and remanded with instructions that

*McCollester I* was vacated on jurisdictional grounds only, the substance of the earlier ruling remains valid and is hereby incorporated as a part of this decision. The sole remaining issue for consideration is whether the supervening amendments to the Keene ordinance cure the constitutional defects cited in *McCollester I.*

### The Facts

The fourth version of the Keene ordinance,[2] (*see* Appendix) now before the Court for consideration, prohibits juveniles under sixteen years of age from being on a public street or in any public place from 10 p.m. to 5 a.m. unless the juvenile:

1. Is accompanied by a parent, legal guardian, or person over eighteen years of age who is authorized or approved by the juvenile's parent or guardian;

2. Is in transit to or from his place of employment;

3. Is in transit between the hours of 10 p.m. and 12 midnight to or from a restaurant, library, movie theater, store, or other place of public accommodation;

4. Is in transit between the hours of 10 p.m. and 12 midnight to or from a church, meeting hall, school, courthouse, or other place of public assembly or worship, including participation in demonstrations, protests, gatherings, rallies, picketing, sit-ins, sleep-ins, or similar occupations by a group seeking to publicize its position for which a City permit has been granted.

The ordinance defines "public street" as streets, sidewalks, and private ways open to public use, and defines "being on a public street or public way" as including presence in or on a parked motor vehicle. A public "place" is defined as including parks, playgrounds, schoolyards, governmental building yards, vacant lots, municipal parking lots, and parking lots open to the public, such as those of supermarkets, restaurants, movie theaters, and other places of public accommodation.

Plaintiffs claim that the supervening amendments, passed February 18, 1982, do not cure the constitutional flaws of the Keene ordinance. Plaintiffs complain that the ordinance remains overly restrictive in spite of the new amendments which exempt juveniles from curfew restrictions if they are passengers in a moving motor vehicle or if they are traveling before midnight to or from participation in a public assembly of "persons seeking to publicize their position, which assembly has been authorized by a City permit". In sum, plaintiffs argue that the current Keene ordinance is still overly broad and violates Fourteenth Amendment Due Process guarantees against unreasonable governmental interference with citizens' liberty and privacy rights.

Defendants counter with the argument that the Keene juvenile curfew is a narrowly-drawn ordinance, especially as clarified by the February 1982 amendments. Furthermore, defendants claim that any ordinance infringement of the liberty and privacy interests of juveniles or their parents is outweighed by the significant and legitimate public purposes which the ordinance serves, including: protection of the public safety and welfare through prevention of nocturnal juvenile crime; protection of juveniles from moral and physical harm; and encouragement of parental supervision of children.

### Applicable Law

In considering the parties' summary judgment motions, the Court follows the well-established rule that the moving party bears the burden of showing that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Donovan v. Agnew,* 712 F.2d 1509, 1516 (1st Cir.1983); *Early v. Eastern Transfer,* 699 F.2d 552, 554–55

---

this Court hold a full hearing on the question of justiciability. *McCollester v. City of Keene, New Hampshire,* No. 82–1349, slip op. (1st Cir. Feb. 4, 1983).

2. The ordinance, originally passed on July 3, 1980, was amended on July 17, 1980, February 5, 1981, and February 18, 1982.

(1st Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983). Here, as agreed by the parties, there is no genuine issue of material fact, and therefore the ordinance challenge may be considered on summary judgment.

The Court finds the current version of the Keene ordinance to be overbroad and unconstitutional, as it impermissibly curtails the liberty and privacy rights guaranteed to juveniles and parents by the Fourteenth Amendment Due Process clause. The ordinance, despite its exceptions, sweeps a broad range of innocent behavior into the category of prohibited conduct. The resulting infringement of plaintiffs' rights of "personhood and privacy" cannot be justified by the City's countervailing interests in crime prevention, juvenile morality, or parental supervision. *See generally* L.H. Tribe, *American Constitutional Law* §§ 15–1 to 3, 15–15, 15–21 (1978) (discussion of source and substance of Fourteenth Amendment Due Process Clause guarantees of personhood and privacy, including protected rights of travel and choice of family lifestyle).

The analysis model for this case is found in *Richards v. Thurston, supra,* 424 F.2d 1281, where the First Circuit Court of Appeals used a two-step analysis when considering a Fourteenth Amendment Due Process Clause challenge to the validity of a high school student's suspension from school for violation of a school rule against long hair. The Circuit Court first held the minor's interest in wearing his hair as he wished to be a personal liberty interest protected by the Fourteenth Amendment Due Process Clause. *Id.* at 1284–85. The Court next proceeded to consider whether there was an outweighing state interest justifying the school rule intruding on plaintiff's liberty interests. *Id.* at 1285. The Court cited three factors to be considered in this balancing analysis: the nature of the liberty asserted, the context in which it is asserted, and the extent to which the intrusion is confined to the legitimate public interest to be served. *Id.*

In the instant case, this Court must first determine whether plaintiffs' asserted interests in freedom of movement and family privacy are protected liberty interests. The courts have repeatedly recognized that the Fourteenth Amendment Due Process Clause guarantees a "sphere of personal liberty for every individual, subject to reasonable intrusions by the state in furtherance of legitimate state interests". *Id.* at 1284. In addition to rights guaranteed by the first eight amendments, other substantive liberty interests have been identified, including the right of parents to send their children to private school, *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), the right of parents to have their children taught the German language, *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), the right to travel to a foreign country, *Aptheker v. Secretary of State,* 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964), and the right of interstate travel, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). *See Richards v. Thurston, supra,* 424 F.2d at 1284 (and cases therein cited).

### Juvenile's Freedom of Movement

This Court finds that the ordinance implicates a personal liberty interest of the juvenile plaintiff in the freedom of movement. The United States Supreme Court recognized the importance of a citizen's right to move about at will in *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), where the Court held a vagrancy ordinance to be unconstitutionally vague, noting that the prohibited activities, "night walking", "loafing", or "strolling",

> are historically part of the amenities of life as we have known them. They are not mentioned in the Constitution or the Bill of Rights. These unwritten amenities have been in part responsible for giving our people the feeling of independence and self-confidence, the feeling of creativity. These amenities have dignified the right of dissent and have honored the right to be nonconformists and the right to defy submissiveness. They

have encouraged lives of high spirit rather than hushed, suffocating silence.

*Id.* at 164, 92 S.Ct. at 844. Similarly, in his dissent to the denial of certiorari in *Bykofsky v. Borough of Middletown*, 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333, a case concerning the validity of juvenile curfew ordinance, Justice Marshall identified the freedom of movement as a liberty interest protected by the Fourteenth Amendment:

> The freedom to leave one's house and move about at will is "of the very essence of a scheme of ordered liberty". *Palko v. Connecticut*, 302 U.S. 319, 325 [58 S.Ct. 149, 151, 82 L.Ed. 288] (1937), and hence is protected against state intrusions by the Due Process Clause of the Fourteenth Amendment. ... To justify a law that significantly intrudes on this freedom, therefore, a State must demonstrate that the law is "narrowly drawn" to further a "compelling state interest".

*Id.* 429 U.S. at 964–65, 97 S.Ct. at 395. *See* Note, "Assessing the Constitutional Validity of Juvenile Curfew Statutes", 52 Notre Dame Law. 858 (1977).

Thus the Court concludes its threshold inquiry with the determination that the ordinance curtails a personal liberty interest of the juvenile plaintiffs. The Court advances to the second analysis step to determine whether there is an outweighing state interest justifying this intrusion, taking into account the nature of the liberty asserted, the context in which it is asserted, and the extent to which the intrusion is confined to the legitimate public interest to be served. *Richards v. Thurston, supra,* 424 F.2d at 1285.

In considering the first two factors, the nature of the liberty interest and the context in which it is asserted, this Court recognizes that a juvenile does not enjoy the full measure of personal liberties enjoyed by adults and that "the State has somewhat broader authority to regulate the activities of children than of adults". *Planned Parenthood v. Danforth,* 428 U.S. 52, 74, 96 S.Ct. 2831, 2843, 49 L.Ed.2d 788 (1976); *see McCollester I, supra,* 514

F.Supp. at 1050–51. In considering the third factor, the Court recognizes that the State has a valid interest in controlling crime and promoting the welfare of its citizens. *See McCollester I, supra,* 514 F.Supp. at 1050–51; Note, "Juvenile Curfew Ordinances and the Constitution", 76 Michigan L.Rev. 109 (1977).

Nevertheless, the Keene ordinance does not meet even these diluted standards for regulation of juvenile activities. The ordinance curtails all freedom of movement for juveniles, except for employment travel, in public places and on public streets from midnight to 5 a.m. absent an ordinance-approved chaperone, and severely limits a juvenile's freedom from 10 p.m. to midnight. Even a juvenile on a solitary, totally innocent excursion with parental permission, such as stargazing, sitting on the sidewalk near his house, or taking a late evening walk during curfew hours would be in violation of the ordinance. Similarly, a juvenile alone on an emergency mission during curfew hours, with or without parental permission, would be in violation of the ordinance. In sum, with the exception of employment travel, the ordinance prohibits the entire spectrum of unchaperoned juvenile activity, ranging from delinquent to heroic. Furthermore, the ordinance prohibits many innocent, unchaperoned juvenile activities between 10 p.m. and midnight, with several narrow travel exceptions. Thus, the Keene ordinance is so broadly drawn that it impermissibly curtails plaintiff juveniles' personal liberty interest in free movement to pursue nondelinquent activities.

The three governmental objectives offered in justification of curfew restraints by the City of Keene are not sufficient to justify this extensive curtailment of a juvenile's constitutional rights. Because this ordinance sweeps so broadly in prohibiting innocent juvenile activities, the City fails to meet the three-prong test of *Bellotti II, supra,* 443 U.S. at 633–39, 99 S.Ct. at 3042–46, for validity of restraints on minors which would be unconstitutional if placed on adults. The three factors to be con-

sidered in assessing such juvenile restraints are: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing. *Id.* at 634, 99 S.Ct. at 3043. These factors, emphasizing the special vulnerability of children, do not come into play where the innocent behavior of the juvenile creates no risk of delinquent activity. *Johnson v. City of Opelousas,* 658 F.2d 1065 (5th Cir.1981). As noted by the *Johnson* court when considering the constitutionality of a juvenile curfew ordinance in light of the three standards of *Bellotti II, supra:*

> Hence, Opelousas has no 'significant ... interest ... that is not present in the case of an adult' which would justify the prohibition its curfew ordinance places on the specific activities of minors we have described. Therefore, this curfew ordinance, however valid might be a narrowly drawn curfew to protect society's valid interests, sweeps within its ambit a number of innocent activities which are constitutionally protected. The stifling effect upon these legitimate activities is overt and is both real and substantial. Regardless of the legitimacy of Opelousas' stated purposes of protecting youths, reducing nocturnal juvenile crime, and promoting parental control over their children, less drastic means are available for achieving these goals.

658 F.2d at 1074 (citations omitted). Although the Opelousas ordinance was even more broadly drawn than the Keene ordinance, the Court's overbreadth rationale is directly applicable in the instant case. In sum, this Court finds that the overbroad Keene ordinance is not justified by the governmental objectives of protection of public safety, protection of juveniles, or encouragement of parental authority.

### Parents' Privacy Interests

The Court finds further that the stated governmental objectives are not sufficient to justify the ordinance's infringement of parents' privacy and liberty interests. As noted in *McCollester I,* the ordinance restricts the parents' protected liberty interests in family and child rearing by usurping parental discretion in supervising a child's activities and imposing parental liability even where the parent exercised reasonable control or supervision in authorizing a child's activities which violate the ordinance. *McCollester I, supra,* 514 F.Supp. at 1052 & n. 3 (and cases therein cited). The Court finds that this ordinance neither aids in the discharge of parental supervision duties nor qualifies as a justified usurpation of the parental role in a situation where parental control cannot otherwise be provided. *Bellotti II, supra,* 443 U.S. at 632–40, 99 S.Ct. at 3042–46. Thus, the Court finds the ordinance to be an impermissible intrusion into plaintiff parents' privacy and liberty interests in family and childbearing. *McCollester I, supra,* 514 F.Supp. at 1052 & n. 3, 1053.

### Conclusion

In sum, the Court declares the Keene ordinance to be overbroad on its face and violative of the Fourteenth Amendment Due Process Clause. The Court need not address plaintiffs' remaining constitutional challenges to the ordinance. Defendants are permanently enjoined from enforcing the ordinance.

SO ORDERED.

APPENDIX

# CITY OF KEENE

[Seal]

———

In the Year of Our Lord One Thousand Nine Hundred Eighty_____

———

A RESOLUTION RELATING TO THE ADOPTION OF A CURFEW LAW_____

*Resolved by the City Council of the City of Keene, as follows:*

> WHEREAS, there has come to be considerable antisocial activity in Keene, particularly in the downtown area during the evening hours; and

> WHEREAS, some of the activity is perpetrated by persons under the age of 16 years, including disorderly conduct, vandalism and similar acts;

NOW, THEREFORE, BE IT RESOLVED that the City Council of the City of Keene hereby adopts the provisions of NH RSA 31:43-a through NH RSA 31:43-g and enacts a curfew law in the City of Keene requiring that persons under the age of 16 years not be on any public street or in any public place after the hour of 9 o'clock in the evening unless accompanied by a parent, guardian, or other suitable person.

BE IT FURTHER RESOLVED that the fire alarm of the City of Keene be blown at 9 o'clock each evening as a curfew signal indicating the time at which persons under the age of 16 years are required to be off the streets.

AND, BE IT FURTHER RESOLVED that the provisions of the above statute be advertised in The Keene Sentinel to insure that all parents, guardians, and minors, will be aware of their responsibilities under the curfew law.

# CITY OF KEENE

[Seal]

———

In the Year of Our Lord One Thousand Nine Hundred Eighty_____

———

A RESOLUTION Amending Curfew Law_____

*Resolved by the City Council of the City of Keene, as follows:*

> WHEREAS: The Keene City Council on July, 3, 1980, adopted the provision of NHRSA31:43A–G enacting a curfew law in the City of

 Keene requiring that persons under the age of sixteen (16) years not be on any public street or any public place after the hour of 9:00 in the evening unless accompanied by a parent, guardian or any other suitable person, and

WHEREAS: The hour of 9:00 would appear to be too early in the opinion of the members of the Keene City Council,

NOW THEREFORE BE IT RESOLVED THAT Resolution R-80-48 be and is hereby amended by changing the hour of 9:00 to the hour of 10:00 wherever it appears in that resolution thereby making the curfew effective at 10:00 in the evening.

## CITY OF KEENE

[Seal]

In the Year of Our Lord One Thousand Nine Hundred and Eighty-One

A RESOLUTION Amending The Adoption Of A Curfew Law

*Resolved by the City Council of the City of Keene, as follows:*

WHEREAS: By Resolution R-80-48 the City of Keene on July 3, 1980, adopted the provisions of NHRSA 31:43-a through 43-g and enacted a curfew law in the City of Keene; and

WHEREAS: By Resolution R-80-52 enacted on July 17, 1980, the curfew time was changed from 9:00 PM to 10:00 PM; and

WHEREAS: It is the opinion of the Keene City Council that that law requires clarification for the benefit of those affected by it;

NOW THEREFORE BE IT RESOLVED:

1. That the curfew which goes into effect at 10:00 PM each evening in Keene shall end at 5:00 AM on the following morning.

2. That the curfew shall apply to the persons under the age of 16 years who are not accompanied by a parent or legal guardian or by another person over the age of 18 years authorized or approved by the child's parent or guardian.

3. That "public place" be defined as parks, playgrounds, schoolyards, governmental building yards, vacant lots, municipal parking lots and parking lots open to the public (such as parking lots of supermarkets, restaurants, movie theaters and other places of public accommodation).

4. That "public street" be defined as streets, sidewalks, and private ways open to public use.

5. That the curfew shall be inapplicable to those persons under the age of 16 years who shall be en route to or from the following:

1. A place of his or her employment,

2. A restaurant, library, movie theater, store or other place of public accommodation,

3. A play, dance, sporting event or other event of public entertainment,

4. A church, meeting hall, school, courthouse or other place of public assembly or worship.

Except, however, in the case of employment, the above exception for travel shall not excuse any person under the age of 16 years from the curfew beyond 12:00 midnight.

6. That "being" on a public street or in a public way shall include being in or on a motor vehicle.

# CITY OF KEENE

[Seal]

In the Year of Our Lord One Thousand Nine Hundred and Eighty-Two

A RESOLUTION FURTHER AMENDING ADOPTION OF CURFEW LAW BY CITY OF KEENE

*Resolved by the City Council of the City of Keene, as follows:*

WHEREAS: by Resolution R-80-48 the City of Keene on July 3, 1980 adopted the provisions of NHRSA 31:43-a through 43-g and enacted a curfew law in the City of Keene; and

WHEREAS: by Resolution R-80-52 enacted on July 17, 1980 the curfew time was changed from 9:00 PM to 10:00 PM; and

WHEREAS: by Resolution R-81-4A enacted on February 5, 1981 the curfew law adopted by the City of Keene was further clarified and amended;

NOW THEREFORE BE IT RESOLVED:

1. That the exemptions provided in Section 5 of R-81-4A be amended by adding at the end of Exemption 4, after making the period at the end thereof a comma, the following words "including participation in demonstrations, protests, gatherings, rallies, picketing, sit-ins, sleep-ins or similar occupations by a group seeking to publicize its position for which a permit has been issued by the Police Department in accordance with the provisions of Chapter 16, Section 5 of these ordinances.

2. That the definition in No. 6 in R-81-4A be amended by inserting the word "parked" before the words "motor vehicle" so that the paragraph shall read as follows:

"6. That "being" on a public street or in a public way shall include being in or on a parked motor vehicle."