The Honorable Ernest Cunningham State Representative 17 East Ridge Helena, AR 72342
Dear Representative Cunningham:
This is in response to your request for an opinion whether cities, in response to a high rate of vandalism, have the authority to impose a curfew on juveniles; and if so, what limitations would need to be put in such a curfew.
It is my opinion that cities do indeed have such authority, but that each city must bear in mind federal case law which outlines the aspects of curfew ordinances which will most likely withstand constitutional challenge.
The power to impose a curfew by city ordinance is, in my opinion, granted in A.C.A. 14-54-103, which provides in pertinent part:
Cities and incorporated towns shall have power to:
 (1) Prevent injury or annoyance within the limits of the municipal corporation from anything dangerous, offensive, or unhealthy and cause any nuisance to be abated within the jurisdiction given the board of health in 14-262-102;
. . .
 (8) Prevent any riots, noise, disturbance, or disorderly assemblages;
It should be noted, however, that although cities have general authority in this area, it must be exercised in a reasonable and narrowly tailored fashion. In the case of Town of Dyess v. Williams, 247 Ark. 155, 444 S.W.2d 701 (1969), the court held that an ordinance requiring places of business in town to remain closed from midnight to four a.m., the purpose of which was to prevent youths from driving noisily about the streets during this period, was in excess of the town's delegated authority to enact ordinances, because its purpose could have been effected by simply prohibiting the objectionable conduct. The court stated:
It is evident that the town's purpose could readily be accomplished by the enactment of an ordinance directly prohibiting the objectionable conduct. There is no need for the town to attain its objective indirectly by closing all places engaged in lawful business after midnight. In a similar case the Mississippi Supreme Court held invalid an ordinance that would have required drug stores, doctors, lawyers, and all businesses to close their offices by ten o'clock at night. (Citation omitted.) Here too, the sweep of the ordinance goes too far beyond the necessities of the situation.
247 Ark. at 157
It is thus clear that any curfew imposed must be narrowly drawn to prohibit the offensive conduct, and must not operate to overly burden lawful or inoffensive conduct. To do so would violate the "overbreadth" doctrine of the First Amendment. Fortunately, we are guided by federal case law as to what types of curfews will most likely withstand constitutional attack.
In Johnson v. City of Opelousas, 658 F.2d 1065 (5th Cir. 1981), the court struck down a curfew which prohibited unemancipated minors under seventeen years of age from being on the public streets or in a public place between 11:00 p.m. and 4:00 a.m., Sunday through Thursday, and 1:00 a.m. and 4:00 a.m., Friday and Saturday. The only exceptions to the prohibition arose when the minor was accompanied by a parent or "responsible adult," or was on an "emergency errand". The court, after discussing the overbreadth doctrine, held the ordinance invalid, stating:
 . . . under this curfew ordinance minors are prohibited from attending associational activities such as religious or school meetings, organized dances, and theater and sporting events, when reasonable and direct travel to or from these activities has to be made during the curfew period. The same inhibition prohibits parents from urging and consenting to such protected associational activity by their minor children. The curfew ordinance also prohibits a minor during the curfew periods from, for example, being on the sidewalk in front of his house, engaging in legitimate employment, or traveling through Opelousas even on an interstate trip. These implicit prohibitions of the curfew ordinance overtly and manifestly infringe upon the constitutional rights of minors in Opelousas.
 658 F.2d at 1072.
Similarly, a curfew ordinance in McCollester v. City of Keene,586 F. Supp. 1381 (D.N.H. 1984), was struck down even though it contained many exceptions. The ordinance prohibited juveniles under sixteen years of age from being on a public street or in any public place from 10:00 p.m. to 5:00 a.m. unless the juvenile was accompanied by a parent or guardian or someone else over eighteen approved by them; was in transit to or from his place of work; was in transit between the hours of 10:00 p.m. to 12 midnight to or from a restaurant, library, movie theater, store, or other place of public accommodation; or was in transit from the hours of 10 to 12 to or from a church, school, meeting hall, courthouse, or other place where first amendment rights were being exercised.
The court found that the ordinance, despite its exceptions, swept a broad range of innocent behavior into the category of prohibited conduct, and that the resulting infringement of plaintiffs' rights of "personhood and privacy" could not be justified by the city's countervailing interests in crime prevention, juvenile morality, or parental supervision. McCollester, supra, at 1384.
The one federal case in which an ordinance has been upheld against a constitutional challenge is Bykofsky v. Borough of Middletown,401 F. Supp. 1242 (M.D.Pa. 1975), aff'd 535 F.2d 1245 (3rd Cir. 1976), cert. denied, 429 U.S. 964 (1976). In Byofsky, the court upheld the bulk of the ordinance, after finding one or two words void for vagueness. The ordinance was three tiered so as to apply different curfews to different age groups, and contained the following exceptions to its general prohibition:
The curfew did not apply:
 (1) If the minor was accompanied by a parent or guardian, or someone authorized by them to accompany the minor;
 (2) If the minor was exercising first amendment rights protected by the Constitution, such as free exercise of religion, freedom of speech, and the right of assembly, provided the minor first had given notice to the Mayor of the Borough by delivering a written communication signed by the minor and countersigned if practicable by a parent of the minor which specifies when, where, in what manner, and for what first amendment purpose the minor will be on the streets at night during the curfew hours;
 (3) In case of a reasonable necessity but only after the minor[']s parents have communicated the necessity to the police station;
 (4) If the minor was on the sidewalk of his residence, or on the sidewalk of either next-door neighbor;
 (5) If the minor was returning home by a direct route from, and within thirty minutes of the termination of, a school activity or an activity of a religious or other voluntary association, provided prior notice of said activity and the place and probable time of termination was given in writing to the Chief of Police or other officer;
 (6) If the minor had been authorized by special permit obtained from the Mayor, to be on the streets during the curfew hours for necessary nighttime activities;
(7) If the minor carried a certified card of employment;
 (8) If the minor is in a motor vehicle with parental consent for normal travel, (with interstate through Middletown excepted in all cases from the curfew).
The court held that the ordinance was narrowly drawn enough to withstand constitutional scrutiny, and was a valid exercise of the city's police power to combat crime during the curfew hours. I have attached a copy of the case in the hope that it will be of some help to city officials faced with this problem.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.